UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL THOMAS,

       Petitioner,

v.                        Case No: 2:14-cv-338-FtM-29CM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

       Respondents.[1]

---

## OPINION AND ORDER

This matter comes before the Court on an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Michael Thomas ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 9, filed July 24, 2014). Petitioner, proceeding pro se, attacks the conviction and sentence entered against him by the Twentieth Judicial Circuit Court in Lee County, Florida for robbery with a firearm. Id. Respondent filed a response to the petition (Doc. 24). Despite being granted an extension of time

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

to do so (Doc. 30), Petitioner filed no reply, and the matter is now ripe for review.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the petition is resolved on the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background[2]

On October 21, 2009, the State of Florida charged Petitioner with one count of robbery while discharging a firearm, in violation of Florida Statute §§ 812.13, 777.011, and 775.087 (Ex. 1 at 14). A jury found Petitioner guilty as charged (Ex. 1 at 111). He was sentenced to a mandatory minimum prison term of twenty years. Id. at 159. Florida's Second District Court of Appeal affirmed Petitioner's conviction and sentence without a written opinion (Ex. 4); Thomas v. State, 97 So. 3d 228 (Fla. 2d DCA 2012).

On October 15, 2013, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 15). An amended Rule 3.850 motion was filed on

---

[2] Citations to exhibits are to those filed by Respondent on July 28, 2015 (Doc. 26). A trial transcript was provided by Respondent along with the state-court record. Citations to the trial transcript will be cited as (T. at __).

November 13, 2013 (Ex. 19). After securing a response from the state (Ex. 20), the post-conviction court denied the amended Rule 3.850 motion without an evidentiary hearing (Ex. 21). Florida's Second District Court of Appeal affirmed (Ex. 23); Thomas v. State, 152 So. 3d 580 (Fla. 2d DCA 2014).

Petitioner filed another Rule 3.850 motion on June 6, 2014 (Ex. 26). The motion was dismissed as successive by the post-conviction court (Ex. 27). Florida's Second District Court of Appeal affirmed (Ex. 31); Thomas v. State, 192 So. 3d 55 (Fla. 2d DCA 2015).

Petitioner filed a 28 U.S.C. § 2254 petition in this Court on June 9, 2014 (Doc. 1). The amended petition was filed on July 21, 2014 (Doc. 9).

## II.  Legal Standards

### a.  The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal

law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005); <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406).  The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>White</u>, 134 S. Ct. at 1702 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a

specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016), cert. granted Wilson v. Sellers, No. 16-6855, -- S. Ct. ---, 2017 WL 737820 (Feb. 27, 2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. Wilson, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a

decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

### b. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's

performance was unreasonable[.]" <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden to demonstrate prejudice is high. <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

### c. **Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights[.]" <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. <u>Coleman</u>, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial."

Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### III. Analysis

According to the Lee County Sheriff's Office Probable Cause statement, on October 23, 2008, three masked people, a black male, a white female, and another male of unknown race, entered a Subway restaurant and robbed it at gunpoint (Doc. 1 at 6). During the robbery, the gun was dropped by one of the suspects, and it accidentally discharged into the ground. Id.

Subsequently, Myron Vann was identified as a robber in a different robbery (Doc. 1 at 7). In a sworn statement, Vann admitted to driving the getaway vehicle in the Subway robbery. Id. Vann told police that Alisa Montalvo and Petitioner were two of the Subway robbers, and he identified Petitioner as the person who accidentally fired a gun into the floor. Id. When detectives questioned Montalvo, she identified Vann and Petitioner as Subway robbers. Id. At a second interview, Montalvo admitted participating in the Subway robbery, and said that she, Petitioner, and Julian Swisher robbed the restaurant while Vann waited outside in the getaway car. Id.

On April 15, 2009, Petitioner was pulled over for speeding (Ex. 1 at 9). The deputy who stopped him conducted a driver's license check that identified Petitioner as a habitual offender with a suspended license. Id. Petitioner was placed under arrest,

and a search of his car revealed a .45 caliber firearm in his unlocked glove box. Id. It was determined that a bullet recovered from the Subway restaurant was a positive match to the firearm retrieved from Petitioner's glove box. Id.

Petitioner raises the following claims in the instant petition: (1) the trial court erred by failing to suppress the gun found in his car; (2) defense counsel ("Counsel") failed to call Dorothy Thomas and Lamonicka Thomas to testify about out-of-court statements made by Montalvo; (3) Counsel failed to call Dorothy Thomas and Lamonicka Thomas as alibi witnesses; (4) Counsel failed to call a firearms expert to testify that the bullet found at Subway did not come from Petitioner's gun; (5) Counsel failed to request an "alibi" jury instruction; (6) Counsel failed to object to the prosecutor's prejudicial statements during closing; and (7) cumulative errors resulted in the deprivation of his constitutional rights (Doc. 9 at 5-13). Each claim will be addressed separately.

### a. Claim One

Petitioner asserts that the trial court erred when it denied his motion to suppress the firearm found in his car (Doc. 9 at 5). He asserts that the firearm was found during a search of his car after he was pulled over for speeding. Id. After Petitioner was removed from the car, the arresting officer searched his vehicle and found the legally owned gun in Petitioner's glove box. Id.

Prior to trial Counsel filed a motion to suppress the gun (Ex. 1 at 22).

In his motion to suppress the firearm, Petitioner argued that under Arizona v. Gant, 566 U.S. 332 (2009),[3] "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." (Ex. 1 at 23). Since Petitioner was removed from his car after it was stopped, he argued that the gun found in his glovebox must be suppressed under Gant. Id. An evidentiary hearing was held on Petitioner's motion to suppress, during which Counsel again argued that, pursuant to Gant, the gun must be suppressed. Id. at 28-68. In a written order, the trial court denied the motion, noting that, to the extent Gant was retroactive, the case would require suppression of the gun. Id. at 69. However, the court noted, an inventory search of Petitioner's car would have inevitably occurred pursuant to Lee County Sheriff's policy and as a result, "[t]he firearm would have ultimately been discovered by legal means." Id. at 70. Petitioner appealed the

---

[3] Gant overruled New York v. Belton, 453 U.S. 454 (1981) and reaffirmed Chimel v. California, 395 U.S. 752 (1969) in holding that law enforcement officers may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of arrest. Notably, Gant was decided after Petitioner's arrest.

denial of his motion to suppress (Ex. 2); the State filed a brief in response (Ex. 3); and the trial court was affirmed without a written opinion (Ex. 4). Although this claim appears to be exhausted, under the principles of Stone v. Powell, 428 U.S. 465 (1976), federal habeas review of Petitioner's illegal search and seizure claim is not cognizable in this proceeding because Petitioner had a full and fair opportunity to litigate his Fourth Amendment issue in state court.

[W]hen "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted). Thus, the only way for this Court to review the merits of Petitioner's Fourth Amendment claim is for Petitioner to demonstrate that the state courts deprived him of a full and fair opportunity to litigate the claim. Petitioner does not make this showing.

In Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990), the Eleventh Circuit Court of Appeals addressed the Stone requirement for a "full and fair" opportunity to litigate a Fourth Amendment claim and concluded:

> For a claim to be fully and fairly considered
> by the state courts, where there are facts in
> dispute, full and fair consideration requires

> consideration by the fact-finding court, and
> at least the availability of meaningful
> appellate review by a higher state court.

377 F.3d at 1224. As noted previously, Petitioner's illegal search and seizure claim was raised in a pretrial motion to suppress, and the trial court heard testimony on the motion. The trial judge allowed both parties to present argument on the motion. The court then provided a reasoned written opinion on the motion. In addition, the illegal search and seizure claim was raised on direct appeal, and the trial court's decision with regard to this issue was affirmed. In sum, Petitioner was afforded a full and fair opportunity to litigate and have adjudicated his Fourth Amendment claim in state court; therefore, under Stone v. Powell, he is not permitted to further litigate the claim in this Court. Thus, Claim One is barred from review.

### b. Claim Three[4]

In Claim Three, Petitioner merely offers the following:

> Dorothy Thomas and Lamonicka Thomas were witnesses to why state's witness Ms. Montalvo testified and implicated Petitioner in crime. The two witnesses were told by Ms. Montalvo if she did not testify and say Petitioner was involved in crime, her child was going to be taken away from her.
>
> Brandon Murph had testimony that state witness Myron Vann, fabricated story of Petitioner

---

[4] Petitioner scratched through Claim Two with a note stating, "Petitioner waives this ground." (Doc. 9 at 7). Accordingly, this Court will not address Claim Two. For clarity, the Court will use the same numbering system as Petitioner.

> being involved in crime. He would explain why
> Myron Vann claimed he wrote statement
> exonerating Petitioner, and then saying he
> wrote such statement from fear.

(Doc. 9 at 8). Although these statements do not state a claim,

Petitioner asserts that he raised this issue in his Rule 3.850

motion. Id. at 9. Accordingly, the Court will liberally construe

the statements as raising the same issue as he raised in the first

ground of his amended Rule 3.850 motion. In the Rule 3.850 motion,

Petitioner argued that Counsel was ineffective for failing to

adequately investigate and call Dorothy Thomas, Lamonicka Thomas,

and Brandon Murph as defense witnesses at his trial (Ex. 19 at 6).

The post-conviction court denied the claim on Strickland's

performance prong:

> With regards to Dorothy Thomas and Lamonicka
> Thomas, Defendant asserts that had counsel
> called these two witnesses, they both would
> have testified that Alisa Montalvo, a co-
> defendant who entered a plea in exchange for
> testifying against the Defendant, came to
> their house crying while telling them that she
> did not want to testify against the Defendant
> because her testimony would be untruthful, but
> that her lawyer advised her that she had to
> testify. They would also testify that Ms.
> Montalvo told them that she had to testify
> untruthfully against the Defendant, because
> her mother threatened to take her son away
> from her. Furthermore, Ms. Lamonicka Thomas
> would have testified that at a later date, Ms.
> Montalvo ad told her that the Defendant did
> not commit the robbery.
>
> As it relates to Brandon Murph, Defendant
> alleges that had counsel called him to
> testify, he would have testified that he and

- 16 -

Myron Vann, another co-defendant, were roommates, and Mr. Vann told Mr. Murph that he falsely accused the Defendant so as to cover up the involvement of his cousin, Gabriel Vann, in the robbery. Defendant contends Mr. Murph would have further testified that Myron Vann told him that he knowingly retrieved the Defendant's gun from Ms. Montalvo's house.

Defendant has attached affidavits from each of the three potential witnesses to his rule 3.850 motion. He argues that had counsel called these three witnesses, then their testimony would have potentially corroborated the Defendant's testimony, strengthened his credibility, impeached the State's witnesses, and created reasonable doubt in the minds of the jurors. Ms. Montalvo and Mr. Vann's testimony, according to the Defendant, was motivated by malice, vindictiveness, intolerance, prejudice, and jealousy; and was obtained by a quid pro quo agreement with the State; therefore, he argues that it was incumbent upon his counsel to call these three witnesses.

While adequately pled, this claim must fail, because the purported testimony of these witnesses would have been hearsay testimony, with some of the testimony amounting to double hearsay. Pursuant to § 90.802, Fla. Stat., a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted is inadmissible. Trial counsel cannot be found ineffective for failing to raise inadmissible evidence. <u>Pietri v. State</u>, 885 So. 2d 245, 252 (Fla. 2004). This is not an instance where Defendant is arguing that his co-defendants wished to recant their testimony or that the attached affidavits represent the desire of the co-defendants to recant their testimony; rather, Defendant is arguing that these three witnesses should have been called to give hearsay testimony that the co-defendants were untruthful in their testimony. *Contrast* <u>Butler</u>

v. State, 946 So. 2d 30 (Fla. 2d DCA 2006)
                    (holding that an affidavit from the mother of
                    a key state witness that reflected that her
                    son wished to recant his trial testimony was
                    facially sufficient to warrant an evidentiary
                    hearing).  Accordingly, Ground One is without
                    merit.

(Ex. 21 at 3-4).  Florida's Second District Court of Appeal

affirmed (Ex. 23).  The silent affirmance of the post-conviction

court's ruling is entitled to deference, and the Court must

determine whether any arguments or theories could have supported

the state appellate court's decision.  Wilson, 834 F.3d at 1235.

Petitioner has not shown that there was no reasonable basis for

the state court to deny relief on this ground.  Indeed, the post-

conviction court's finding that Counsel did not perform

deficiently because the proposed testimony was impermissible

hearsay provides a reasonable basis on which to deny habeas relief.

     "Hearsay is a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to

prove the truth of the matter asserted." Fla. Stat. § 90.801(1)(c)

(internal quotation marks omitted).  Hearsay is inadmissible

except as provided by statute. Fla. Stat. § 90.802.  In determining

whether a prior out-of-court statement is hearsay, it does not

matter that a person has testified as a witness during the trial.

Carter v. State, 951 So. 2d 939, 944 (Fla. 4th DCA 2007) ("Hearsay

includes an out-of-court statement of a witness who testifies at

trial, as well as an out-of-court statement by someone who is not a witness on the stand testifying to the statement.").

In the instant case, Petitioner faults Counsel for not offering statements from Dorothy Thomas and Lamonicka Thomas that state's witness Montalvo told them that she (Montalvo) had to lie about Petitioner's involvement in the robbery because if she did not do so, her mother would take away her child. Petitioner also urges that Counsel should have offered testimony from Brandon Murph that his cellmate, Myron Vann, falsely accused Petitioner of participating in the robbery because the real robber was Myron Vann's cousin. In short, Petitioner wished to offer the out-of-court statements of Montalvo and Vann for the truth of the matter asserted in those statements. Accordingly, reasonable competent counsel could have concluded that the proposed testimony from Dorothy Thomas, Lamonicka Thomas, and Brandon Murph was hearsay, and absent an exception to the hearsay rule, which Petitioner does not advance, the statements were inadmissible. Accordingly, the state court's conclusion that Counsel's performance was not deficient was neither contrary to Strickland nor based upon an unreasonable determination of the facts.

Moreover, Petitioner cannot demonstrate Strickland prejudice from Counsel's failure to offer the witnesses' testimony. First, on cross-examination, both Montalvo and Vann admitted making inconsistent pre-trial statements regarding Petitioner's

involvement in the robbery, so the proposed testimony from the Thomases' and Murph would have merely been cumulative to evidence actually offered at trial (T. at 208, 214-16). See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 649-50 (11th Cir. 2016)("[N]o prejudice can result from the exclusion of cumulative evidence, which means that trial counsel's failure to present cumulative evidence was not prejudicial."). Next, the post-conviction court—and by its affirmance, the appellate court—already told us how this issue would have been resolved had Counsel offered the Thomases' and Murph's testimony. Montalvo's and Vann's out-of-court statements would have been rejected as inadmissible hearsay. It is "a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)). Petitioner has not demonstrated Strickland prejudice from Counsel's failure to call the Thomases or Murph to testify at Petitioner's trial.

Because Petitioner demonstrates neither deficient performance nor resulting prejudice from Counsel's failure to call Dorothy Thomas, Lamonicka Thomas, or Brandon Murph at trial, there were reasonable bases for the state courts' rejection of Claim Three, and the claim is denied pursuant to 28 U.S.C. § 2254(d).

### d.   Claim Four

Petitioner asserts that "Dorothy Thomas and Lamonicka Thomas were alibi witnesses.  They had testimony that Placed Petitioner with them instead of at the scene of crime.  They were to testify, but were not called to do so." (Doc. 9 at 10).  Although these statements do not state a claim, Petitioner asserts that he raised this issue in his Rule 3.850 motion. Id. at 10.  A review of the record indicates that this claim was not raised in Petitioner's Rule 3.850 motion.  Petitioner did raise an ineffective assistance of counsel claim based upon Counsel's failure to call alibi witnesses in his second amended Rule 3.850 motion (Ex. 26).  However, the motion was dismissed by the post-conviction court as an abuse of procedure pursuant to Rule 3.850(h) (Ex. 27).

Respondent argues that even if the Court were to construe Claim Four as raising a claim of ineffective assistance of counsel, the claim is unexhausted and procedurally barred because Petitioner did not raise it when he presented his other claims of proposed ineffective assistance in his amended Rule 3.850 motion and then appeal the post-conviction court's ruling thereon (Doc. 24 at 27).  Respondent is correct.  Moreover, Petitioner does not offer cause for his failure to exhaust his claim.  Even if Petitioner were to urge that his failure to exhaust this claim is excused by the United States Supreme Court's decision in Martinez

<u>v. Ryan</u>[5] he would be unsuccessful because Claim Four is not "substantial" and does not fall within <u>Martinez</u>'s equitable exception to the procedural bar.

In his second amended Rule 3.850 motion, Petitioner asserted that, had Counsel called Dorothy Thomas and Lamonicka Thomas to testify at his trial, they would have said that: Petitioner was with them on the night of the robbery; they were all at Dorothy Thomas' house; Dorothy Thomas's daughter was with them; and Myron Vann borrowed Petitioner's car numerous times (Ex. 26 at 9). However, he has not provided any evidence to the Court in support of his assertions. He has not produced a sworn statement of these witnesses' putative testimony regarding an alibi.[6]  Consequently,

---

[5] In <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Id.</u> at 1320.  Under <u>Martinez</u>, a petitioner still must establish that his underlying ineffective assistance claim is "substantial" -- that it has "some merit" before the procedural default can be excused.  <u>Id.</u> at 1318-19.

[6] Petitioner attached notarized affidavits of these witnesses to his first Rule 3.850 motion (Ex. 19), but neither witness attested that Petitioner was with them at the time of the robbery or even suggested that they could provide an alibi.  Rather, the

the claim is too speculative to warrant relief. <u>See</u> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636 (11th Cir. 1985)); <u>see also</u> <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or [by the witness by] affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Because Petitioner cannot demonstrate <u>Strickland</u> prejudice, Claim Four is not "substantial" so as to excuse his failure to exhaust it in state court. <u>Martinez</u>, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence showing that the actual innocence exception would apply to excuse his default of this claim. Accordingly, Claim Four is dismissed as unexhausted.

### d. Claim Five

Petitioner asserts that Counsel was ineffective for failing to retain a "firearms expert" to testify that the bullet found at

---

affidavits were offered to prove that Montalvo and Vann told these witnesses that Petitioner was not involved in the Subway restaurant robbery. <u>See</u> discussion <u>supra</u> Claim Two.

the crime scene did not come from Petitioner's gun (Doc. 9 at 12).
He asserts that, because the state retained an expert who testified
that the bullet was "definitely linked" to Petitioner's gun,
Counsel's failure to secure an expert to refute the testimony
constituted ineffective assistance. Id. Petitioner raised this
claim in his third Rule 3.850 motion (Ex. 26). However, the motion
was dismissed by the post-conviction court as an abuse of procedure
pursuant to Rule 3.850(h) (Ex. 27), and as a result, Claim Five is
unexhausted.

Petitioner does not offer cause for his failure to exhaust
his claim. Even if Petitioner were to urge that his failure to
exhaust this claim is excused by the United States Supreme Court's
decision in Martinez v. Ryan, he would be unsuccessful because
Claim Five is not "substantial" and does not fall within Martinez's
equitable exception to the procedural bar. Notably, this claim
is purely speculative. Petitioner has not established the
existence of an expert who would have testified that the bullet
did not come from Petitioner's gun, nor has he established that
such a witness would have been available to testify. "Without
some specificity as to the proposed expert's testimony, any
assertion that an expert would testify consistently with his claims
is mere speculation and does not entitle him to habeas relief."
Finch v. Sec'y, Dept of Corr., 643 F. App'x 848, 852 (11th Cir.
2016); see also Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th

Cir. 2006) ("Th[e] prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'") (quoting United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980)).

Because Petitioner has not demonstrated Strickland prejudice, Claim Five is not "substantial" so as to excuse his failure to exhaust it in state court. Martinez, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim. Accordingly, Claim Five is dismissed as unexhausted.

### e. Claim Six

Petitioner asserts that Counsel was ineffective for failing to request an alibi jury instruction (Doc. 9 at 12). He asserts that such an instruction was necessary because evidence was offered at trial that Petitioner was not at the crime scene. Id. Petitioner raised this claim in his third Rule 3.850 motion (Ex. 26). However, the motion was dismissed by the post-conviction court as an abuse of procedure pursuant to Rule 3.850(h) (Ex. 27), and as a result, Claim Six is unexhausted.

Petitioner does not offer cause for his failure to exhaust his claim. Even if Petitioner were to urge that his failure to exhaust this claim is excused by the United States Supreme Court's

decision in <u>Martinez v. Ryan</u>, he would be unsuccessful because Claim Five is not "substantial" and does not fall within <u>Martinez</u>'s equitable exception to the procedural bar.

Under Florida law, an instruction on an alibi defense must be given if requested by counsel and there is evidence to support such an instruction. <u>Ford v. State</u>, 848 So. 2d 415, 416-17 (Fla. 4th DCA 2003). Here, while the jury was not specifically instructed on the theory of alibi because counsel never requested a separate alibi instruction, the court's charge, when viewed as a whole, correctly stated the issues and law and was adequate. <u>See</u> <u>United States v. Russell</u>, 717 F.2d 518, 521 (11th Cir. 1983). Review of the record reveals that the defense presented by Petitioner at trial was that his co-defendants implicated him in the Subway restaurant robbery in exchange for a lighter sentence. Petitioner testified at trial that he was actually with his family at the time of the robbery (T. at 319-20).

In this case, the jury was properly and fully instructed about the presumption of innocence and the burden of proof in a criminal case (T. at 351-52). The jury was also expressly instructed that they should find Petitioner not-guilty of the crime charged if the state had not proved the case beyond a reasonable doubt. <u>Id.</u> Additionally, the court instructed the jury regarding the reliability of the evidence, weighing the evidence, and the credibility of witnesses. <u>Id.</u> at 352-54. The trial court clearly

and correctly instructed the jury that it could believe or disbelieve all or any part of the evidence presented or the testimony of any witness. Id. at 354. Accordingly, the jury was instructed that they must find Petitioner not-guilty if they did not believe the testimony of the state's witnesses or if they believed Petitioner's alibi. It is generally presumed that jurors follow their instructions. See Richardson v. Marsh, 481 U.S. 200, 211 (1987).

The evidence admitted at trial of Petitioner's guilt was more than sufficient and included cooperating co-defendant testimony. In light of the instructions actually given to the jury and the trial transcript, it is clear the jury was aware that it should find Petitioner not-guilty if there was any reasonable doubt he was present at the scene. In other words, the jury knew that if it were to find the alibi defense believable, it was required to acquit Petitioner of the charged offense. The jury rejected the defense presented and instead believed the strong testimony of the state witnesses. Thus, petitioner cannot demonstrate that failure to provide the alibi instruction resulted in the guilty verdict. Consequently, he cannot demonstrate Strickland prejudice.

Because Petitioner has not demonstrated Strickland prejudice, Claim Six is not "substantial" so as to excuse his failure to exhaust it in state court. Martinez, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence indicating that

the actual innocence exception would apply to excuse his default of this claim. Accordingly, Claim Six is dismissed as unexhausted.

### f. Claim Seven

Petitioner asserts that Counsel was ineffective for failing to object to the state prosecutor: calling Petitioner a liar; urging the jury to believe the state's witnesses; and telling the jury to disregard testimony which, if believed, would have exonerated Petitioner (Doc. 9 at 13). Petitioner raised this claim in his third Rule 3.850 motion (Ex. 26). However, the motion was dismissed by the post-conviction court as an abuse of procedure pursuant to Rule 3.850(h) (Ex. 27), and as a result, Claim Seven is unexhausted.

Petitioner does not offer cause for his failure to exhaust his claim. Even if Petitioner were to urge that his failure to exhaust this claim is excused by the United States Supreme Court's decision in Martinez v. Ryan, he would be unsuccessful because Claim Five is not "substantial" and does not fall within Martinez's equitable exception to the procedural bar.

In Ruiz v. State, the Florida Supreme Court noted that "the role of counsel in closing argument is to assist the jury in analyzing [the] evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence[.]" 743 So. 2d 1, 4 (Fla. 1999). The Ruiz court explained that "[t]he assistance

permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." Id. (citing United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978)). The Florida Supreme Court has further stated that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Robinson v. State, 610 So. 2d 1288, 1290 (Fla. 1992) (quoting Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985)).

In the instant case, the prosecutor informed the jury that they were allowed to consider the stake someone has in a case when weighing a witness' testimony (T. at 323). The prosecutor summarized the witness' testimony and the evidence presented at trial and urged that the state's witnesses had no reason to lie about Petitioner's involvement in the robbery. Id. at 323-29. Under Florida law, a prosecutor is allowed to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence; and this is precisely what the prosecutor did. Miller v. State, 926 So. 2d 1243, 1254 (Fla. 2006); Craig v. State, 510 So. 2d 857, 865 (Fla. 1987) ("When counsel refers to a witness or a defendant as being a 'liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what

evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration."). Petitioner cannot satisfy <u>Strickland</u>'s performance prong because, based on <u>Ruiz</u>, <u>Robinson</u>, and <u>Miller</u>, reasonable defense counsel could have concluded that he had no grounds on which to object to the prosecutor's statements.

Because Petitioner has not demonstrate deficient performance, Claim Seven is not "substantial" so as to excuse his failure to exhaust it in state court. <u>Martinez</u>, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim. Accordingly, Claim Seven is dismissed as unexhausted.

### g. Claim Eight

In Claim Eight, Petitioner appears to argue that he is entitled to habeas relief because of Counsel's cumulative errors (Doc. 9 at 13). This Court need not determine whether, under current Supreme Court precedent, cumulative error claims can ever succeed under 28 U.S.C. § 2254(d). Nor must the Court determine whether this claim has been exhausted. 28 U.S.C. § 2254 (b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Petitioner has not shown an error of constitutional dimension with respect to

any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); Hill v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 805 (11th Cir. 2014)(same). Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  **Certificate of Appealability**[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    Claims One, Three, and Eight of the amended 28 U.S.C. § 2254 petition for habeas corpus relief filed by Michael Thomas (Doc. 9) are **DENIED**, Claim Two is deemed waived, and the remaining claims are dismissed as unexhausted.  This case is dismissed with prejudice.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___12th___ day of April, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: OrlP-4
Copies: All Parties of Record